The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,              )
                                       )   NO.   CR09-00402RAJ
                   Plaintiff,          )
                                       )
          v.                           )   UNITED STATES' SENTENCING
                                       )   MEMORANDUM AND MOTION
HIEP NGUYEN,                           )   PURSUANT TO USSG 5K1.1
                                       )
                   Defendant.          )
_____)

A.    **INTRODUCTION**

        The United States of America, by and through Jenny A. Durkan, United States

Attorney for the Western District of Washington, and Nicholas W. Brown and Aravind

Swamination, Assistant United States Attorneys for said District, submits this sentencing

memorandum.

        Sentencing is scheduled for December 3, 2010.

        On September 2, 2010, the Defendant entered a plea of guilty to the following

charge: Conspiracy to Commit Wire Fraud, as charged in Count 1 of the Indictment, in

violation of Title 18, United States Code, Sections 1349 and 2.  As part of the Plea

Agreement, the United States Attorney's Office for the Western District of Washington

agreed to move to dismiss the remaining counts in the Indictment at the time of

1   sentencing.

2        The offense charged in Count 1 carries a maximum penalty of:  imprisonment for

3   up to thirty (30) years;  fine of up to two hundred and fifty thousand dollars

4   ($250,000.00); a period of supervision following release from prison of up to three (3)

5   years; and a one hundred dollar ($100.00) special assessment.

6   **B.**    **THE OFFENSE CONDUCT**

7        This Court presided over a week long trial of co-defendant Mark Ashmore, during

8   which the conspiracy, and the co-conspirators various roles, were gone into in some

9   depth.  Mr. Nguyen, testified during the trial and the Court is familiar with the role he

10   played in helping to execute this fraud.

11        The scheme was a classic "credit investor" scam that used the personal and

12   financial information of others to fraudulently gain control of various properties.  Mr.

13   Ashmore would identify residential real property for sale.  He would then contact the

14   seller of the subject properties, and would generally offer to purchase the property at well

15   above the asking price.  As part of the propose sale agreement, the seller of the subject

16   properties sign an "upgrade agreement," assigning any proceeds over the original asking

17   price to a company owned or controlled by Mr. Ashmore.

18        Mr. Ashmore and his co-conspirators would recruit and pay individuals to pose as

19   buyers ("straw buyers") for the subject properties, often promising to pay them substantial

20   sums of money.  In return for their fee, the straw buyers would allow their identities and

21   credit information to be used in mortgage loan applications.  The applications were

22   submitted to financial institutions and mortgage lenders, and represented the straw buyer

23   as the true buyer of the selected properties, and the individual responsible for the loan.

24   The money obtained via the fraudulent loans was the diverted to Mr. Ashmore and then

25   on to the other conspirators, and some was used to secure residential real property for

26   Defendant's and other members of the conspiracy's use.

27        Beginning sometime in 2003 and continuing through 2007, the Defendant worked

28   with his co-defendant, Mark ASHMORE, and others, at a business entity called Equity

U.S. SENTENCING MEMO - 2
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Solutions Northwest (ESNW).  ESNW was formed by Mr. Ashmore and the Defendant,

2    and others, to help execute this fraudulent scheme.  It was part of Defendant's intent to

3    help Ashmore and his entities gain control of single family residences for himself and his

4    co-conspirators for investment purposes.  The Defendant he knew he was unable to

5    legitimately obtain financing to acquire these properties and pay for holding costs and/or

6    remodeling work on the properties using his true financial and credit information.

7    Accordingly, he knowingly and intentionally engaged in the fraudulent scheme described

8    herein to accomplish his objective by illegal means.

9        During this time, the Defendant purchased homes in his own name and assisted

10   two others in purchasing homes in their names, using fraudulent information to obtain the

11   financing for the loans.  The Defendant purchased two homes in his own name, both

12   located within the State of Washington, which resulted in a loss of $480,000.  In addition

13   to the properties he personally purchased, the Defendant two associates, C.L. and J.D., to

14   pose as straw buyers.  To help facilitate these transactions, the Defendant used a company

15   he owned and controlled called "C-Global" to pose as the employer for the straw

16   purchaser.  The property transaction involving the residence located at 10536 NE 24th St.,

17   Bellevue, Washington, resulted in a ultimate loss of $275,000.  The property transaction

18   involving the residence located at 20218 170th Avenue NE, Woodinville, Washington

19   resulted in a ultimate loss of $192,000.

20       This fraudulent scheme was orchestrated to purchase over forty different

21   residential properties in Washington and Nevada.  A majority of the properties were often

22   "flipped" in subsequent transactions, often leading to falsely inflated property values.

23   This means that members of the conspiracy would recruit another straw buyer to purchase

24   the same real property, typically at a significantly inflated price over the prior purchase

25   agreement between a member of the conspiracy and the original seller.

26       The conspirators would also often make, or cause others to make, the payments on

27   the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans

28   until the properties could be sold again, oftentimes in another flip to another straw buyer.

U.S. SENTENCING MEMO - 3
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  However, in the end, the conspirators ultimately failed to make payments on the loans,

2  and the properties generally went into foreclosure or were sold in short sales, causing the

3  financial institutions and mortgage lenders to suffer substantial losses.

4  **C.   Base Offense Level and Loss Amount Calculations**

5  The Presentence Report accurately summarizes the offense conduct in this case

6  and correctly calculates the offense level, criminal history category, and resulting

7  advisory Sentencing Guidelines range.  The Defendant's base offense level is 7, pursuant

8  to U.S.S.G. § 2B1.1.

9  A 14-level upward adjustment based on loss amount also applies, pursuant to

10  U.S.S.G. § 2B1.1(b)(1)(H), as the loss amount is greater than $400,000, but less than

11  $1,000,000.  The government calculates the actual total loss associated to the Defendant

12  as $907,000.  To arrive at this figure, a Financial Analyst at the FBI and the case agent

13  SA Hilary Salee, took the gross loan amounts for the various properties involved in the

14  scheme, and examined the recorded documents pertaining to the subsequent sales of these

15  properties.  However, the gross amount must be reduced by "the amount the victim has

16  recovered at the time of the sentencing from disposition of the collateral, or if the

17  collateral has not been disposed of by that time, the fair market value of the collateral at

18  the time of sentencing."  Application Note 3(E)(ii).  In addition, for the purposes of the

19  Guidelines calculation, the loss amount is the greater of the actual or intended loss,

20  whichever is higher.  Application Note 3(C).

21  **D.   Total Offense Level and Advisory Guidelines Range**

22  Pursuant to the plea agreement, the parties agreed that neither party will seek an

23  adjustment based upon the role the Defendant played in committing the offense pursuant

24  to United States Sentencing Guidelines Section 3B1.1 or 3B1.2.  The Defendant's role in

25  this case is neither aggravating or mitigating and therefore no role adjustment is

26  appropriate.  Mr. Nguyen can be distinguished from his co-defendant's Mr. Reimer and

27  Mr. DiCugno in that his involvement in this scheme lasted a longer period of time.  As a

28  long-time friend of Mr. Ashmore and founding member of his company ESNW, Mr.

U.S. SENTENCING MEMO - 4
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Nguyen was more intimately involved in some of the aspects of the conspiracy.

2  However, he also did not personally purchase as many properties himself, nor recruit

3  many others to be involved.  Moreover, the government believes that Mr. Ashmore

4  controlled most aspects of the conspiracy.  The Defendant's role is therefore viewed as

5  average.

6  The parties are free to argue the application of any other provisions of the United

7  States Sentencing Guidelines, but the government does not believe any additional

8  provisions apply.

9  The Presentence Report correctly accounts for deductions to the Base Offense

10  Level for acceptance of responsibility.  The Defendant has assisted the United States by

11  timely notifying the authorities of Defendant's intention to plead guilty, thereby

12  permitting the United States to avoid preparing for trial and permitting the Court to

13  allocate its resources efficiently.  The Defendant's Total Offense Level should be

14  decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b).

15  The Total Offense Level is therefore a level 18.  The government agrees that the

16  defendant has no prior criminal history and is therefore in a criminal history category of I.

17  The corresponding guideline range is 27-33 months.

18  **E.**      **COOPERATION**.

19  The United States respectfully requests the Court depart from the United States

20  Sentencing Guidelines (USSG) range, pursuant to Section 5K1.1, due to the substantial

21  assistance provided by the Defendant.  The terms of the plea agreement contained a

22  cooperation provision.  Specifically, Mr. Nguyen agreed that he would cooperate

23  completely and truthfully with law enforcement authorities in the investigation and

24  prosecution of other individuals involved in criminal activity.  Such cooperation would

25  include, but not be limited to, complete and truthful statements to law enforcement

26  officers, as well as complete and truthful testimony, if called as a witness before a grand

27  jury, or at any state or federal trial, retrial, or other judicial proceedings.  The Defendant

28  acknowledged that his obligation to cooperate would continue after he entered a guilty

U.S. SENTENCING MEMO - 5
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    plea and sentence had been imposed, no matter what sentence he received, and the

2    Defendant's failure to continue his cooperation would constitute a breach of the plea

3    agreement.

4          The Defendant fulfilled the terms of his plea agreement by cooperating in the

5    investigation and substantially assisting the government.  The Defendant openly admitted

6    his involvement in the conspiracy when first contacted by law enforcement and provided

7    a written statement discussing his culpability.  Prior to entering a plea of guilty to the

8    conspiracy charged in Count 1, he proffered to the government about the charged

9    offenses.  During the proffer, he admitted to his role in the offense and assisted the

10   government in preparing for trial against his co-defendant Mr. Ashmore.  He ultimately

11   testified at trial, and the Court of course had an opportunity to evaluate his testimony and

12   its impact.  In the government's estimation, Mr. Nguyen's testimony, along with his co-

13   defendants, was helpful in securing Mr. Ashmore's conviction.

14   **F.     RESTITUTION**.

15         As part of the plea agreement, Mr. Nguyen agreed to make restitution to any

16   financial institution harmed by his participation in the charged conspiracy, in an amount

17   to be determined at the time of sentencing.  The government calculates the Defendant's

18   restitution amount to be $810,500.  His restitution obligation shall be joint and several

19   with the three co-defendants.

20   **G.     RECOMMENDATION AND JUSTIFICATION**.

21         The government respectfully recommends a custodial sentence of 15 months, to be

22   followed by three years of supervised release.  As set forth in the Supreme Court's

23   decision in *United States v. Booker*, 453 U.S. 220, 246 (2005), this Court is required to

24   consider the sentencing range calculated under the United States Sentencing Guidelines,

25   together with the other factors set forth in Title 18, United States Code, Section 3553(a),

26   including: (1) the nature and circumstances of the offense and the history and

27   characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the

28   seriousness of the offense, to promote respect for the law, and to provide just punishment

1   for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the

2   public from further crimes of the defendant, and (d) to provide the defendant with

3   educational and vocational training, medical care, or other correctional treatment in the

4   most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and

5   the sentencing range established for the offense as set forth in the guidelines; (5) any

6   pertinent policy statement; (6) the need to avoid unwarranted sentence disparity among

7   defendants involved in similar conduct who have similar records; (7) the need to provide

8   restitution to victims.

9        The nature and circumstances of Defendant's offense, as well as his personal

10   history and characteristics, support a 15-month term of imprisonment.  First and foremost,

11   the offense the Defendant participated in was an incredibly serious crime.  The impact of

12   this credit investor scheme on the mortgage lending industry cannot be overstated.  Many

13   of the lenders involved in this particular scheme have gone out of business.  This includes

14   Pierce Commercial Bank in Tacoma, Washington, which was closed on November 5,

15   2010.   In addition, the Defendant was involved in the formation of ESNW at an early

16   juncture, was more aware of many of the details of the scheme than others involved, and

17   profited substantially from its success.

18        Moreover, the Defendant was personally responsible for using fraudulent loans to

19   purchase numerous properties himself, as well as recruiting others into the scheme as

20   straw buyers.  He also convinced members of his family to make substantial personal

21   loans to Mr. Ashmore and his companies, which resulted in substantial losses.

22        The government's recommended sentence is well below the recommended

23   guideline range, solely due to the Defendant's ultimate cooperation against Mr. Ashmore

24   and his lack of criminal history.  Given these factors and his personal circumstances, the

25   government believes that he is unlikely to re-offend.  On balance, the government

26   believes that a sentence of 15 months is sufficient, but not greater than necessary, to

27   satisfy the goals of sentencing.

28

U.S. SENTENCING MEMO - 7
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**H.**     **CONCLUSION**

For the reasons set forth above, the government respectfully recommends a sentence of 18 months, to be followed by three years of supervised release.

Respectfully submitted this 24th day of November, 2010.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

  /s Nicholas Brown
NICOLAS BROWN
ARAVIND SWAMINATHAN
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Ste. 5220
Seattle, Washington 98101
Facsimile: 206-553-0755
Phone: 206-553-1565
E-mail: nicholas.brown@usdoj.gov

U.S. SENTENCING MEMO - 8
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970